**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIEWTECH, INC., a California
corporation; JUNG KWAK, an
individual,
     *Petitioners-Appellants,*

     v.

UNITED STATES OF AMERICA;
COMMISSIONER OF INTERNAL
REVENUE SERVICE,
     *Respondents-Appellees.*

No. 09-56808

D.C. No.
3:09-cv-01606-IEG-
CAB

OPINION

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Submitted June 7, 2011*
Pasadena, California

Filed August 10, 2011

Before: Dorothy W. Nelson and Sandra S. Ikuta, Circuit
Judges, and Lawrence L. Piersol, Senior District Judge.**

Opinion by Judge Ikuta

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Lawrence L. Piersol, Senior District Judge for the
District of South Dakota, sitting by designation.

**COUNSEL**

David R. Clark, The Clark Law Firm, Meadow Vista, California, for appellants Viewtech, Inc. and Jung Kwak.

Gretchen M. Wolfinger, United States Department of Justice, Washington, DC, for appellee the United States of America.

## OPINION

IKUTA, Circuit Judge:

In connection with an assessment of a taxpayer for unpaid taxes, the IRS began searching for the taxpayer's assets and issued a summons to a bank for a related third party's account information. The taxpayer and third party argue that 26 U.S.C. § 7609[1] required the IRS to notify them, which would have enabled them to seek a court order quashing the summons. Applying *Ip v. United States*, 205 F.3d 1168 (9th Cir. 2000), we conclude that under the circumstances of this case, no notice was necessary, and therefore we affirm the district court.

I

After the IRS assessed Jung Kwak for some $3 million in federal income taxes for the year ending December 31, 2007, the IRS's efforts to locate assets to satisfy this assessment led it to Viewtech, a California Subchapter S corporation,[2] in which Kwak had extensive involvement. The government's investigation showed that Viewtech's finances were significantly intertwined with Kwak's. Kwak owned 100 percent of the shares of Viewtech in 2007, and 97 percent of its shares in 2008. Kwak received almost $14 million in income, interest, expenses, and wages from Viewtech in 2007, and some $1.7 million in 2008. In addition to these payments to Kwak,

---

[1]Unless otherwise noted, all statutory references are to Title 26 of the United States Code.

[2]Subchapter S status means, among other things, that all of the corporation's income flows directly to the corporation's shareholders without first being taxed as corporate income.

Viewtech directly paid more than a million dollars of Kwak's personal federal income tax for 2007 and 2008. The financial outlays were not wholly one-sided, however: twice in 2007 and twice again the following year, Kwak deposited significant sums of cash (a total of approximately $675,000) into Viewtech's Wells Fargo account. The next year, in addition to paying Kwak his regular salary, Viewtech transferred $180,000 from its own bank account into Kwak's personal bank account.

After determining that Viewtech maintained its bank account at Wells Fargo Bank, the IRS exercised its authority under § 7602(a) to issue a summons to the bank for records and testimony regarding Viewtech's account. On July 24, 2009, Kwak and Viewtech filed a motion to quash the summons. The government moved to dismiss the motion pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that § 7609 did not give Kwak or Viewtech standing to challenge the summons and that the district court accordingly lacked subject matter jurisdiction over the case. The district court agreed and dismissed the motion to quash, and Kwak and Viewtech timely appealed.

We review the district court's grant of a motion to dismiss under Rule 12(b)(1) de novo, *Ip*, 205 F.3d at 1170, and review factual findings relevant to that determination for clear error. *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000).

II

**[1]** The IRS's statutory power to summons persons, information, and documents is set forth in two provisions, 26 U.S.C. § 7602 and § 7609. In connection with an investigation of an assessed taxpayer, the IRS may summons any person the IRS deems appropriate and may require that person to appear "at a time and place named in the summons and to produce such books, papers, records or other data, and to give

such testimony, under oath, as may be relevant or material to such inquiry." § 7602(a)(2).

**[2]** The IRS's efforts to collect on a tax assessment frequently lead it to third parties (i.e., individuals or businesses other than the assessed taxpayer), on suspicion that the taxpayer may be trying to conceal assets in the accounts, holdings, or property of the third party. *See, e.g.*, *Ip*, 205 F.3d at 1170-71. After the IRS issues a summons to the bank for the third party's records, it must determine whether either the taxpayer or the third party account owner is entitled to notice of the summons. *See* § 7609(a); *Ip*, 205 F.3d at 1171. Section 7609 provides generally that if the IRS asks the person summoned (here, the third party's bank) for specified information relating to a person identified in the summons (in this example, the third party account owner), the IRS must give that third person notice of the summons.[3] The issue of who gets notice is highly significant because only a person who is entitled to notice may bring a proceeding to quash such a summons. *See* § 7609(b)(2)(A).

Section 7609(c)(2) sets out the exceptions to the general rule that the IRS must give notice to third parties (which

---

[3]Section 7609(a)(1) states:

> If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons.

26 U.S.C. § 7609(a)(1).

allows them to bring a proceeding to quash). Relevant here, the general rule is inapplicable when an IRS summons is "issued in aid of the collection of — (i) an assessment made or judgment rendered against the person with respect to whose liability the summons is issued or (ii) the liability . . . of any transferee or fiduciary of any person referred to in clause (i)." § 7609(c)(2)(D). (For purposes of clarity, we refer to these exceptions individually as the "clause (i) exception" and the "clause (ii) exception.") Under the plain language of the clause (i) exception, if the IRS issues a summons to help it recover on an assessment issued against a taxpayer, the IRS need not give notice to any third party, and therefore no third party would have the power to bring an action to quash the summons.

As we noted in *Ip*, this plain language reading of the exception "vitiates completely the legislative purpose of providing notice to third parties because it would be difficult to hypothesize any situation where notice would be required once the IRS makes an assessment against any taxpayer and seeks to collect the tax." 205 F.3d at 1174. Therefore, *Ip* declined to adopt a literal reading of clause (i)'s language.[4]

In *Ip*, the IRS made an assessment against Diamond Trade, a Hong Kong corporation that operated in the United States

---

[4]*Ip* dealt with a prior version of § 7609, which, for present purposes, is not materially different from the current version. Until 1998, the relevant provision, 26 U.S.C. § 7609(c)(2) (1994), read, in pertinent part:

A summons shall not be treated as described in this subsection if —

. . .

(B) it is in aid of the collection of—

(i) the liability of any person against whom an assessment has been made or judgment rendered, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause (i).

through its agents, Chun Lung Siu and two family members, but did not pay taxes here. *Id.* at 1169-71. The IRS suspected Siu's fiancee, Ip, of depositing Diamond Trade sales proceeds into her bank accounts at Bank of America and Cathay Bank, and then wiring money to Hong Kong. *Id.* at 1169, 1171. The IRS issued a summons to the two banks for records relating to Ip's account. *Id.* at 1171. Ip moved to quash the summons, but the district court dismissed, concluding that she fell within § 7609's exceptions to the notice requirement and therefore lacked standing to move to quash the summons. *Id.*

We reversed. After conducting a detailed review of § 7609's language, legislative history, and other circuits' interpretations of the statute, we rejected the IRS's contention that it did not need to provide notice to *any* third parties when it issued a summons "in aid of the collection" of a tax assessment. *Id.* at 1174. We explained that Congress enacted § 7609 for the purpose of giving third parties notice that the IRS was summonsing their records, and enacted § 7609(c)'s exceptions to the notice requirement based solely on its recognition "that giving taxpayers notice in certain circumstances would seriously impede the IRS's ability to collect taxes," as would giving notice to fiduciaries or transferees of the taxpayer. *Id.* at 1172. Therefore, we concluded that the clause (i) exception should be given a limited reading to avoid vitiating the legislative purpose. *Id.*

In determining the proper scope of the clause (i) exception, we considered decisions from two other circuits which upheld the IRS's decision to refrain from notifying a third party whose records were being summoned. *See id.* at 1173-74 (citing *Barmes v. United States*, 199 F.3d 386, 389-90 (7th Cir. 1999) (per curiam) and *Davidson v. United States*, 149 F.3d 1190 (10th Cir. 1998) (unpublished)). We determined that these decisions were consistent with our view of the legislative history, because in both cases, there was a close relationship and overlap of interests between the third party and the taxpayer: In *Barmes*, the assessed taxpayer was a general part-

nership, and the third parties were the general partners; in *Davidson*, the third party was the spouse of the assessed taxpayer and held her spouse's funds in the summoned bank account. *See id.* at 1174.

**[3]** Based on this review, we derived the rule that a third party should receive notice that the IRS has summonsed the third party's records unless the third party was the assessed taxpayer, a fiduciary or transferee of the taxpayer, or the assessed taxpayer had "some legal interest or title in the object of the summons." *Id.* at 1175; *see id.* at 1176. *Ip* applied this test non-technically when considering the parties' relationships to one another. For example, in considering whether a third party could be deemed a fiduciary or transferee of the taxpayer, *Ip* focused on whether the taxpayer had transferred funds into the third party's account, *id.* at 1174, 1176-77. Similarly, in considering whether a taxpayer had a sufficient legal interest in the object of the summons, we considered whether there was an employment, agency, or ownership relationship between the taxpayer and third party, *id.* at 1176.

In light of this analysis, we concluded that Ip was entitled to notice. First, she was not the taxpayer. *See id.* at 1176. Second, the IRS's affidavit did not state that Ip had deposited the assessed taxpayer Diamond Trade's funds into her account, and therefore we could not properly conclude she was a fiduciary or transferee of the taxpayer. *Id.* Third, we held that "[b]ecause the account is in Ip's name and she is not an employee, officer, agent or stockholder in the entity against which the tax assessment has been made, the [IRS's] declaration does not prove the assessed taxpayer Diamond Trade had the legal ownership interest mandated by clause (i)." *Id.*

III

**[4]** We apply the same analysis here. Our inquiry is straightforward as to Kwak. He is the assessed taxpayer, and

therefore is disqualified from notice under § 7609(c)(2)(D)(i). *See id.* at 1172-73. Applying the test to Viewtech, we must consider whether for purposes of § 7609(c)(2), Viewtech could be deemed a fiduciary or transferee of Kwak or whether Kwak had a sufficient legal interest in the object of the summons, i.e., Viewtech's bank account.

**[5]** Under the *Ip* standard, Kwak had a sufficient interest in the Viewtech account to disqualify Viewtech from receiving notice under § 7609(c)(2). As noted above, Kwak had a significant ownership interest in Viewtech. As a 100 percent and 97 percent shareholder of a Subchapter S corporation, he was entitled to substantially all of Viewtech's income. Kwak was also a Viewtech employee and an officer of the corporation during some periods. This close legal relationship is sufficient to give Kwak the requisite interest in the Viewtech bank account such that Viewtech is disqualified from receiving notice under the clause (i) exception. Moreover, there was evidence that Kwak had transferred funds into the Viewtech account. The IRS presented evidence not only that Kwak directly deposited nearly $700,000 of his own funds into the Viewtech account, but also that Viewtech paid a portion of Kwak's federal income tax and transferred $180,000 into Kwak's personal account, thereby indicating that at least some of the funds in the Viewtech account were for Kwak's use. The evidence that Viewtech's account held Kwak's funds supports the conclusion that Viewtech was Kwak's fiduciary or transferee, and therefore Viewtech was also disqualified from receiving notice under the clause (ii) exception.

**[6]** Because the summons in question was issued in aid of the collection of Kwak's previously assessed tax deficiency, and because both Kwak and Viewtech are covered by the exceptions to notice set forth in § 7609(c)(2)(D), neither was entitled to notice of the summons. Therefore, neither had standing to quash it.

**AFFIRMED**.